**12**

<u>N.B. FOR CLERK'S USE ONLY</u>
JUDGMENT ENTERED ON DOCKET MARCH 5, 2002
PURSUANT TO MASS.R.CIV.P.58(a) AND NOTICE SENT
TO PARTIES PURSUANT TO MASS.R.CIV.P.77(d)
AS FOLLOWS:

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION  01-0879

**NOTIFY**

Walter Milano, Admr  PLAINTIFF(S)

v.

James J. Bulger  DEFENDANT(S)

### JUDGMENT ON FINDINGS BY THE COURT

THIS ACTION CAME ON FOR HEARING BEFORE THE COURT, Locke J., PRESIDING, AND THE ISSUES HAVING BEEN DULY HEARD AND FINDINGS HAVING BEEN DULY RENDERED; IT IS ORDERED AND ADJUDGED AS FOLLOWS: Judgment shall enter against the defendant James J. Bulger in the amount of ($1,501,056.00) in Compensatory damages and ($500,000.00) in punitive damages with statutory interest.

DATED AT BOSTON, MASSACHUSETTS, THIS 4 DAY OF March 2002

(Refer to Memorandum of Decision and Order on Plff's Motion for A/D)

MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

Notice Sent
3-5-02
J.E.R.
R+A
W

By: _____
ASSISTANT CLERK

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                                                           SUPERIOR COURT
                                                                                                       CIVIL ACTION
                                                                                                       N0. 01-0879-B

**NOTIFY**

WALTER MILANO, Personal Representative
and Administrator of the Estate of Michael Milano
                                            Plaintiff,


vs.

JAMES J. BULGER
                    Defendant


## MEMORANDUM OF DECISION AND ORDER
## ON PLAINTIFF'S MOTION FOR ASSESSMENT OF DAMAGES

In this action, plaintiff Walter Milano, as next of kin and as Administrator of the Estate of his brother, Michael Milano, seeks compensatory and punitive damages against James J. Bulger for the wrongful death of Michael Milano on or about March 8, 1973. The complaint was filed on February 23, 2001. On application, based on the representation of counsel that the defendant was a known fugitive whose whereabouts were unknown, the Court ordered notice by publication pursuant to Mass.R.Civ.P 4(D)(2). The defendant did not answer the Complaint or otherwise appear in connection with the case.

On January 2, 2002, the Court issued a default judgment against the defendant and scheduled a hearing on plaintiff's motion for an assessment and award of damages. Notice was again provided by publication. This Court conducted a hearing on the assessment of damages on

February 27, 2002.[1]

## **BACKGROUND**

Based on information contained in the Complaint, affidavits, and on the testimony of the plaintiff, Walter Milano during an assessment hearing on February 27, 2002, the Court finds the following facts. Michael Milano, born November 26, 1941, was the middle of five children of Michael and Helen Milano. He and his siblings were raised by his mother following the untimely death of their father when Michael was three years old. At some point Mrs. Milano moved her family to Winthrop where Michael attended and graduated high school in 1960. Following graduation, he alternated between Florida and Maine working in the restaurant industry for several years before returning to the Boston area to pursue his ambition of owning a restaurant. He obtained a job as a bartender at Mother's Café on Nashua Street in Boston's West End and, over the course of the next decade, rose to the position of manager.

Michael was single and provided considerable support to his mother and siblings. He bought a two-family home in Winthrop, telling his mother that she need not worry about her daughter, Margaret because Michael would see to it that she always had a roof over her head. As described by Walter Milano, Michael was "the glue that held the family together" based on his close relationship to his mother, his position as middle child, and his family-centered personality.

On or about March 8, 1973, Michael Milano was murdered by shots fired from a 45-caliber machine gun while sitting in a motor vehicle. His death has all the hallmarks of a gangland

---

[1] At the hearing, and in the presence of the plaintiff, the judge advised counsel that he knew members of the defendant's extended family; had employed a nephew in the Norfolk County District Attorney's Office, and that there was a former professional and longstanding personal relationship between the defendant's brother and the judge's family. The plaintiff, through counsel, did not believe there was any conflict or appearance of conflict in this Court's hearing the matter.

execution and the case remained unsolved for over two decades. In September, 2000, a United States Grand Jury sitting in the District of Massachusetts returned a superceding Indictment against James J. "Whitey" Bulger and others, alleging that Bulger was the head of a criminal racketeering enterprise in Boston. Bulger was charged with a series of murders spanning several decades, including the murder of Michael Milano. At the time of or following the issuance of the new indictment, police officials met with the Milano family and reported that information suggested Michael Milano's death was a case of mistaken identification and that Milano was not the intended target. Unfortunately this information, which for the family solved a longstanding question, was provided too late to be of solace to Michael's mother who was then suffering from Alzheimer's Disease. Mrs. Milano died in January, 2002 at the age of 84.

## DISCUSSION

Plaintiff seeks compensatory damages for the costs of burial, loss of earning capacity, and loss of services and affection. He also seeks an award of punitive damages.

*1. Compensatory Damages*

In a wrongful death action as in tort cases generally, compensatory damages are awarded according to statute and well established principles. See, G.L. c. 229, s. 2.[2] The decedent's estate is entitled to recover for funeral and burial costs. Santos v. Lumbermens Mutual Casualty Co., 408 Mass 70 (1990). The surviving spouse or next of kin are entitled to damages for the loss of value of the decedent's life, including but not limited to compensation for loss of expeted net income, services and companionship. Miga v. Holyoke, 398 Mass. 343, 352 n.10.

---

[2] Although c.229, s. 2 speaks to damages arising out of a negligent wrongful death, the statute has been applied to intentional torts, Mellinger v. West Springfield, 401 Mass. 190, 191-192 (1987), and by its terms, provides a remedy for willful conduct.

-3-

Here, the plaintiff has presented evidence by way of affidavit that the actual costs of funeral and burial totaled $3,500.00. For the year prior to his death Michael Milano earned approximately $35,000, and according to actuarial estimates of the U.S. Bureau of Labor Statistics, had a work life expectancy of 28.5 more years at the time of his death. By simple calculation, without factoring in increases in salary, by inflation or through investment, there was a conservative loss of earning capacity in the amount of $997,500. Additionally, the plaintiff seeks damages for the loss of services and affection and in this regard, represents all who are entitled to such damages under c. 229, s. 2. Hallett v. Wrentham, 398 Mass. 550 (1986); Schultz v. Grogean, 406 Mass. 364, 366-367 (1990). According to the plaintiff, Michael was a vital and important member of the Milano family. He had a special relationship with his mother, bridged the gap between his older and younger siblings, and had assumed the role of provider for his older sister so that his mother need not worry about her in the future. Although c. 229 does not permit recovery for bereavement, grief or anguish, the Court finds that an award in the amount of $500,000 is fair and reasonable in light of the decedent's services and relationship to his family.

2. *Punitive Damages*

In addition to compensatory damages the plaintiff seeks an award of $3million in punitive damages. By statute, punitive damages may be awarded in a wrongful death action, "in an amount not less than five thousand dollars in such case as the decedent's death was caused by the malicious, willful, wanton or reckless conduct of the defendant..." G.L. c. 229, s.2. "Punitive damages essentially constitute a windfall to punish the tortfeasor, not an effort to recompense particular harmed individuals." Burt v. Myer, 400 Mass. 185, 190 (1987). The amount of a punitive damage award is determined by reference to that necessary to punish the tortfeasor and

deter future wrongdoing. Schulof v. Northeast Cellulose, Inc., 545 F.Supp. 1200, 1206 (D. Mass. 1982). In this case an award of punitive damages seems warranted in light of the willful nature of the wrongful act resulting in the victim's death. The callousness of the event, whereby an innocent man was intentionally gunned down on a city street under the mistaken belief that he was someone else, demonstrates a degree of reckless disregard for the sanctity of human life that warrants a financial penalty in the civil justice system. Moreover, the cloud placed over the surviving family by the circumstances of the victim's execution, coupled with the re-living of the event nearly three decades later are factors in formulating a punitive damage figure. Weighing all of these factors, the Court awards punitive damages in the amount of $500,000.

Accordingly, judgment shall enter against the defendant James J. Bulger in the amount of One Million, Five Hundred One Thousand and Fifty ($1,501,050) Dollars in compensatory damages and Five Hundred Thousand ($500,000) Dollars in punitive damages, with statutory interest thereon.

Dated: March 4, 2002

Justice of the Superior Court